| | |
|---|---|
| CODY, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DANA FALSETTI, an individual,<br><br>Defendant. | NO. 2:17-cv-01833<br><br>**DEFENDANT'S ANSWER TO COMPLAINT AND COUNTERCLAIMS** |
| DANA FALSETTI, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>CODY, INC., a Delaware corporation,<br><br>Counterdefendant. | |

Defendant, Dana Falsetti, by and through her attorneys of record, Jeffers, Danielson, Sonn & Aylward, P.S., hereby answers the Complaint as follows:

## NATURE OF THE ACTION

1. Answering Paragraph 1 of the Complaint, Defendant admits she provided content and materials to Plaintiff based upon a contractual relationship between them

but without sufficient knowledge at the present time to admit or deny the remaining allegations in Paragraph 1 of the Counterclaims and, therefore, denies the same.

## THE PARTIES

2. Answering Paragraph 2 of the Complaint, Defendant is without sufficient knowledge at the present time to admit or deny the allegations contained therein and, therefore, denies the same.

3. Answering Paragraph 3 of the Complaint, Defendant admits the allegations contained therein.

4. Answering Paragraph 4 of the Complaint, Defendant is without sufficient knowledge at the present time to admit or deny the allegations contained therein and, therefore, denies the same.

## JURISDICTION

5. Answering Paragraph 5 of the Complaint, Defendant admits that she entered into a Talent License and Release Agreement on August, 1, 2016, and that she retains a copy of that agreement. Defendant denies the remaining allegations contained therein.

6. Answering Paragraph 6 of the Complaint, Defendant admits the allegations contained therein.

7. Answering Paragraph 7 of the Complaint, Defendant denies the allegations contained therein.

## VENUE

8. Answering Paragraph 8 of the Complaint, Defendant admits only that venue is proper in a Washington state court.

## FACTUAL BACKGROUND

9. Answering Paragraph 9 of the Complaint, Defendant admits the allegations contained therein.

10. Answering Paragraph 10 of the Complaint, Defendant denies the allegations contained therein.

11. Answering Paragraph 11 of the Complaint, Defendant admits that she agreed to abide by the confidentiality provision in the Agreement, but denies the remaining allegations contained therein.

12. Answering Paragraph 12 of the Complaint, Defendant admits the allegations contained therein.

## **FIRST CLAIM FOR RELIEF**
### **(Breach of Written Contract)**

13. Answering Paragraph 13 of the Complaint, Defendant admits that Plaintiff told her of its acquisition but denies the remaining allegations contained therein.

14. Answering Paragraph 14 of the Complaint, Defendant realleges and incorporates by references each and every response set forth in the preceding paragraphs.

15. Answering Paragraph 15 of the Complaint, Defendant denies the allegations contained therein.

16. Answering Paragraph 16 of the Complaint, Defendant denies the allegations contained therein.

17. Answering Paragraph 17 of the Complaint, Defendant denies the allegations contained therein.

18. Answering Paragraph 18 of the Complaint, Defendant denies the allegations contained therein.

## **SECOND CLAIM FOR RELIEF**
### **(Trade Libel)**

19. Answering Paragraph 19 of the Complaint, Defendant realleges and incorporates by references each and every defense set forth in the preceding paragraphs.

20. Answering Paragraph 20 of the Complaint, without knowledge of the precise alleged statements at issue, Defendant denies the allegations contained therein.

21. Answering Paragraph 21 of the Complaint, Defendant denies the allegations contained therein.

22. Answering Paragraph 22 of the Complaint, Defendant denies the allegations contained therein.

23. Answering Paragraph 23 of the Complaint, Defendant denies the allegations contained therein.

24. Answering Paragraph 24 of the Complaint, Defendant denies the allegations contained therein.

25. Answering Paragraph 25 of the Complaint, Defendant denies the allegations contained therein.

26. Answering Paragraph 26 of the Complaint, Defendant denies the allegations contained therein.

27. Answering the Prayer for Relief, Defendant denies that the Plaintiff is entitled to the relief requested.

## AFFIRMATIVE DEFENSES

Defendant further responds to Plaintiff's counterclaims by alleging the following defenses or affirmative defenses:

1. As to all claims for relief, and each of them, Plaintiff's counterclaims in whole or in part, fail to state a claim upon which relief may be granted.

2. Any and all relevant statements made by Defendant are true.

3. Any and all relevant statements made by Defendant were privileged and not actionable.

4. Plaintiff consented to any and all relevant statements made by Defendant.

5. Plaintiff has not suffered damages as a result of Defendant's actions.

6. Plaintiff's alleged damages, if any, are barred in whole or in part by Plaintiff's failure to mitigate such damages.

7. Any alleged damages sustained by Plaintiff are the result of the conduct of a third-party over which Defendant had no control.

8. The allegations in the complaint, and the resulting damage, if any, to Plaintiff were proximately caused, or contributed to Plaintiff by its own conduct.

9. Any harm or injury or claim of damages of Plaintiff, or cause of action by Plaintiff, as alleged or stated in the complaint, is barred by estoppel, waiver, unclean hands, and assumption of the risk as to all or part of the claims against Defendant.

10. Plaintiff's claims are barred to the extent there is no privity of contract between the Defendant and Plaintiff.

11. Pursuant to the rules of civil procedure, all possible affirmative defenses may not have been alleged herein insofar as sufficient facts were not available after reasonable inquiry upon the filing of this Answer and, therefore, Defendant reserves the right to amend this answer to allege additional Affirmative Defenses if subsequent investigation warrants.

## **DEFENDANT'S COUNTERCLAIMS AGAINST PLAINTIFF CODY, INC.**

COMES NOW, Defendant/Counterclaimant Dana Falsetti ("Falsetti"), by and through her attorneys of record, Jeffers, Danielson, Sonn & Aylward, P.S., and for causes of action against Plaintiff/Counterdefendant, Cody, Inc. ("Cody") herein, alleges as follows:

## **PARTIES**

1. Falsetti is an individual residing in Philadelphia, Pennsylvania.

2. Upon information and belief, Cody is a Delaware corporation with its principal place of business in Seattle, Washington.

///

## JURISDICTION

3. On or about August 1, 2017, Falsetti and Cody entered into a written "Talent License and Release Agreement" ("Agreement"). Under the Agreement the parties agreed that the jurisdiction for any disputes arising from the Agreement would be in state or federal courts within King County, Washington, and any such disputes would be governed by the laws of Washington state.

4. This Court has diversity jurisdiction over the claims asserted in this lawsuit under 28 U.S.C. § 1332 as Cody identifies as a resident of Seattle, Washington, and Falsetti is a resident of Philadelphia, Pennsylvania and the amount in controversy exceeds $75,000.00.

## VENUE

5. Venue is proper in this Court pursuant to the terms of the Agreement.

## STATEMENT OF FACTS

**Background on Dana Falsetti:**

6. Falsetti is a well-known and well-respected accessible yoga teacher, writer and public speaker with hundreds of thousands of students and followers world-wide.

7. As a large-bodied woman, she advocates for those with similar body types who want to find the confidence to live life more fully.

8. Falsetti uses her platform to inspire critical thinking, self-awareness and confidence across multiple media including podcasts, public speaking engagements, writing, brand partnerships and through international yoga workshops.

9. Falsetti has been featured in print and online publications including: Seventeen, People, Shape, Upworthy, Mantra, NY Mag, and many more. She was the 2017 Shorty Award winner (recognizing excellence in social media) in the Health and Wellness category, and has been mentioned on numerous lists of the "most inspiring" people.

10. At the heart of Falsetti's inspirational videos and messaging is her desire to inspire large-bodied persons, and others who feel dehumanized, to find self-worth and motivation to accomplish their own goals in life.

**The Underlying Agreement Between Falsetti and Cody:**

11. On or about August 1, 2016, Falsetti entered into the Agreement with Cody. The general purpose of the Agreement was to grant Cody an exclusive license to use Falsetti's name, image and materials to produce and publicly promote yoga-related videos to be sold to members of Cody's yoga community (the "Falsetti Content").

12. Upon information and belief, Cody's yoga community has over 200,000 members and Cody has made many hundreds of thousands of dollars, if not more, through its public use of Falsetti's name and image. The Falsetti Content can currently be found on Cody's website, including at: <https://www.codyapp.com/category/yoga>.

13. Upon information and belief, many of Cody's customers became members because of their admiration for Falsetti and because only Cody has the exclusive license of her materials and ability to offer Falsetti's Content.

14. Falsetti's "I Am Worthy" video, which constitutes part of the Falsetti Content, was promoted by Cody and has had at least 20 million views online. On YouTube, the caption beneath the video currently reads: "This is a story about Cody coach Dana Falsetti who felt limited by her body her entire life. Her life-changing journey allowed her to achieve what she once thought to be impossible."

15. A material provision in the underlying Agreement is that Cody expressly agrees not to exploit the Falsetti Content in a manner intended to harm her reputation.

**Cody's Sale of its Company to ALO, LLC:**

16. ALO, LLC ("ALO") is a California entity known for selling yoga apparel. It maintains a website at < https://www.aloyoga.com>. ALO's clientele are slender-

bodied and limited to sizes ranging, for example, from XXS to L in women's sizes. ALO's advertising and promotional materials show only very thin female models wearing ALO apparel. ALO's male models are more muscular, but still quite svelte.

17. Upon information and belief, numerous yogis have complained to ALO about its refusal to sell apparel for large-bodied practitioners and such complaints have sometimes been seen in the comments section on the ALO website.

18. Upon information and belief, ALO's clothing and brand image are incompatible with Falsetti's own brand image and advocacy for larger-bodied people.

19. Upon information and belief many, if not most, of Falsetti's students cannot wear ALO apparel because it does not fit large-bodied people.

20. Upon information and belief, in the Fall of 2017, Cody agreed to sell its business to ALO. Cody informed Falsetti of the sale around the end of September 2017.

21. Upon information and belief, Cody was fully aware that selling its assets to ALO would include the sale of materials incorporating Falsetti's name and image.

22. Upon information and belief, at the time Cody agreed to sell its assets to ALO, Cody was fully aware of ALO's brand and reputation for selling and promoting apparel for only slender-bodied people and that ALO's brand was incompatible with Falsetti's brand and public image.

23. On or about October 31st 2017, Cody sent out an email blast to its subscription-based customer list advertising a "Last Chance: Yoga with Dana Falsetti **SALE**." The email continues, "Dana Falsetti's yoga plans will be unavailable for purchase after November 6th." The email ends with the statement "We hope that this sale allows members of the Cody community to enjoy her training for years to come, and wish her success in her future endeavors."

24. This email generated considerable concern and raised numerous questions among Falsetti's followers as to what was going on between Falsetti and Cody and if

she was leaving the company. In fact, many of Falsetti's followers used social media to ask her directly what was going on.

25. Importantly, Falsetti was not informed that this advertisement was to be publicly distributed and that the Falsetti Content was to be sold off at a reduced rate, or that Cody was going to announce a parting of ways from Falsetti.

26. Falsetti was left to fend off questions from concerned students and followers as to why Cody was stopping the sale of the Falsetti Content and whether those materials would be available elsewhere, and where could they find her coaching and inspirational writings now?

27. On November 22nd 2017, ALO sent out an email blast to all of Cody's customers. The email advertised ALO apparel to Cody's customers. Upon information and belief, the customer list could only have been provided to ALO by Cody.

28. Upon information and belief, after receiving this second email in November 2017 -- on the back of Cody's earlier email announcing a parting of ways with Falsetti -- Falsetti's students and followers reasonably believed that she had left Cody and that Falsetti was now affiliated with ALO.

29. Upon information and belief, ALO's email to Cody customers, and those customer responses shared with Falsetti, show that customers understood that there was an affiliation between ALO and Cody at least as early as November 22, 2017.

30. Upon information and belief, another Cody coach received the November 22, 2017, email from ALO and soon thereafter posted information on social media about the Cody/ALO merger. Upon information and belief, this other Cody coach posted the information to protect her own students.

31. Falsetti subsequently became aware that her students and followers were expressing concern and disappointment about her new affiliation with ALO, a company known to snub larger-bodied yogis.

32. Upon information and belief, Falsetti's apparent affiliation with ALO was seen by the yoga community as antagonistic to her advocacy for the health and wellness of large-bodied persons.

33. Cody's choice to affiliate with ALO was causing harm to Falsetti's reputation in the yoga community. Falsetti reasonably believed that she owed an explanation to her students and followers.

34. On or about December 6, 2017, and in response to the email blasts described above, Falsetti posted an explanatory statement to her followers on Instagram. Generally, the statement offered what was already public information -- that ALO and Cody were now affiliated --and that Falsetti was not working with them anymore based upon the incompatibility of Falsetti's and ALO's respective brands and brand messaging.

35. Cody's calculated sale of its company to ALO, including materials incorporating Falsetti's name and image, harmed Falsetti's reputation and constitutes a breach of the Agreement.

36. Upon information and belief, Cody had no justification to breach its contractual obligation to refrain from harming Falsetti's reputation.

## FIRST COUNTERCLAIM FOR RELIEF

### (Breach of Contract)

37. Falsetti incorporates by reference all the allegations previously set forth in Paragraphs 1 - 36 of this counterclaim as if fully set forth herein.

38. Falsetti is a large-bodied woman who teaches yoga, and who advocates for those with similar body types.

39. Falsetti and Cody are parties to the Agreement, which grants Cody a license to use Falsetti's name, image and materials to produce and publicly promote yoga-related videos to be sold to members of Cody's yoga community.

40. Falsetti has not breached the Agreement. At no time did Falsetti refuse to allow Cody to use her name and likeness in relation to its videos, nor did she refuse to provide any other service to Cody. Falsetti has continuously provided the service required of her under the Agreement.

41. A material provision of the Agreement is that Cody expressly agrees not to exploit Falsetti's materials in a manner intended to harm her reputation.

42. In the Fall of 2017, Cody agreed to sell its assets to ALO, a California apparel company with a reputation for shunning large-bodied persons. Upon information and belief, by inducing Falsetti to sign the Agreement and then purporting to assign its rights to ALO, Cody has breached the Implied Duty of Good Faith and Fair Dealing.

43. Cody's decision to sell its assets to ALO, including Falsetti's materials, was followed by email blasts from both Cody and ALO to Cody's customer list.

44. The apparent affiliation between Falsetti and ALO caused an uproar in the yoga community especially among Falsetti's large-bodied followers who believed she was now affiliated with ALO, a body shaming company.

45. Cody's decision to sell assets incorporating Falsetti's name and image to ALO harmed Falsetti's reputation in violation of the Agreement.

46. Cody's decision to sell assets incorporating Falsetti's name and image to ALO constitutes a breach of the Agreement.

47. Falsetti is entitled to damages for Cody's breach of the Agreement.

## SECOND COUNTERCLAIM FOR RELIEF
### (Equitable Indemnity)

48. Falsetti incorporates by reference all the allegations previously set forth in Paragraphs 1 - 47 of this counterclaim as if fully set forth herein.

49. In August 2016, Falsetti and Cody entered into the Agreement.

50. A material provision of the Agreement is that Cody expressly agrees not to exploit Falsetti's materials in a manner intended to harm her reputation.

51. Upon information and belief Cody sold its assets including the Falsetti Content to ALO, a company shunning large-bodied persons. Such sale has caused and continued to cause harm to Falsetti's reputation.

52. Cody committed a wrongful act against Falsetti, specifically breaching its agreement not to harm Falsetti's reputation and breaching the duty of good faith and fair dealing that is inherent in any contract under Washington law.

53. Such wrongful act by Cody has exposed Falsetti to litigation against ALO. Specifically, ALO has filed a lawsuit against Falsetti in the Superior Court of California, County of Los Angeles, Case No. BC 686168.

54. ALO was not connected with the initial transaction, which was Cody and Falsetti entering into the Agreement.

55. Falsetti is entitled to consequential damages under the doctrine of equitable indemnity because of Cody's wrongful conduct causing her to now defend against ALO's lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Falsetti prays for relief as follows:

1. An award of monetary damages resulting from Cody's breach of the Agreement in an amount to be proven at trial;

2. Injunctive relief preventing Cody from selling, assigning or otherwise transferring materials incorporating Falsetti's name and image to ALO;

3. A Declaratory Judgment establishing that Falsetti is discharged from any further duties or obligations under the Agreement;

4. An award of attorneys' fees and costs to the fullest extent permissible under the law; and

5. For other such and further relief as the Court deems just and equitable.

DATED: this 29th day of December, 2017.

**JEFFERS, DANIELSON, SONN & AYLWARD, P.S.**

*/s/ Laraine M. I. Burrell*

Laraine M. I. Burrell, WSBA # 48684
BRIAN C. HUBER # 23659
2600 Chester Kimm Road
P.O. Box 1688
Wenatchee, WA 98807-1688
Telephone: 509-662-3685
Fax: 509-662-2452
Email: laraineb@jdsalaw.com;
brianh@jdsalaw.com
Attorneys for Defendant

# CERTIFICATE OF SERVICE

I hereby certify that on December 29, DATE \@ "yyyy" 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System. Notice of this filing will be sent to the parties listed below by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    CARNEY BADLEY SPELLMAN, P.S.
    Attorneys for Plaintiff Cody, Inc.
    Ashley K. Long
    701 Fifth Avenue, Suite 3600
    Seattle, WA 98104-7010
    Email: long@carneylaw.com

    THOITS LAW
    Attorneys for Plaintiff Cody, Inc.
    Andrew P. Holland
    Stephen C. Gerrish
    Misasha S. Graham
    400 Main Street, Suite 250
    Los Altos, CA 94022
    Email: aholland@thoits.com
    sgerrish@thoits.com
    mgraham@thoits.com

DATED at Wenatchee, Washington this 29th day of December, DATE \@ "yyyy" 2017.

        By: s/LARAINE M. BURRELL
        WSBA No. 48684
        BRIAN C. HUBER
        WSBA No. 23659
        JEFFERS, DANIELSON, SONN & AYLWARD, P.S.
        2600 Chester Kimm Road
        P.O. Box 1688
        Wenatchee, WA 98807-1688
        Telephone: 509-662-3685
        Fax: 509-662-2452
        Email: laraineb@jdsalaw.com; brianh@jdsalaw.com
        Attorneys for Defendant