UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CODY INC.,<br><br>               Plaintiff,<br><br>   v.<br><br>DANA FALSETTI,<br><br>               Defendant. | CASE NO. C17-1833-MJP<br><br>ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS; DENYING MOTION TO STRIKE AFFIRMATIVE DEFENSES |

THIS MATTER comes before the Court on Plaintiff and Counter-Defendant Cody, Inc.'s Motion to Dismiss Defendant's Counterclaims and Affirmative Defenses. (Dkt. No. 19.) Having reviewed the Motion, the Response (Dkt. No. 20), the Reply (Dkt. No. 25) and all related papers, the Court GRANTS the Motion to Dismiss the counterclaims and DENIES the Motion to Strike the affirmative defenses. The Court declines to hear oral argument on this matter.

**Background**

Plaintiff Cody, Inc. ("Cody") brings this action against Defendant Dana Falsetti for breach of contract and trade libel. (Dkt. No. 1.) Ms. Falsetti counterclaims for breach of contract and equitable indemnity. (Dkt. No. 16.)

## I. Agreement Between Cody and Ms. Falsetti

Cody produces online health and fitness content, including training videos on yoga and wellness. (Dkt. No. 1 at 1.) Ms. Falsetti is a well-known yoga teacher who offers videos and related content on Cody's site. (Dkt. No. 16 at 6.) Ms. Falsetti describes herself as a "large-bodied woman" who "advocates for those with similar body types who want to find the confidence to live life more fully." (Id.) Ms. Falsetti has been featured in numerous media outlets and has hundreds of thousands of followers on Instagram and Facebook. (Dkt. No. 1 at 3.) Ms. Falsetti states that she "uses her platform to inspire critical thinking, self-awareness and confidence" among her followers, and that "[a]t the heart of [her] inspirational videos and messaging is her desire to inspire large-bodied persons, and others who feel dehumanized, to find self-worth and motivation to accomplish their own goals in life." (Dkt. No. 16 at 7.)

On August 1, 2016, Cody and Ms. Falsetti entered into a "Talent License and Release Agreement" (the "TLRA"). (See Dkt. No. 19-1.) The TLRA granted to Cody and "its agents, subsidiaries, affiliates, licensees, successors, and assigns, and to other such entities or persons as [Cody] may designate from time to time" the rights to produce, promote, and own video and other content using Ms. Falsetti's "physical likeness, name, voice, image, performance, persona, and exercise routine," and the rights to "any marketing collateral associated therewith" (collectively, the "Falsetti Content") (Id. at § 1.a.)

The TLRA granted Cody an irrevocable license to "use and exploit" the Falsetti Content "in whole or in part, either alone or in conjunction or combination with other works . . . for any advertising, marketing, and promotional purposes . . ." (Id. at § 1.b.) Notwithstanding the foregoing grant of rights, Cody agreed not to use the Falsetti Content "in a manner intended to harm" Ms. Falsetti's reputation. (Id.)

The TRLA included a provision by which Ms. Falsetti agreed not to disclose to any third party the content of any of Cody's or its affiliates' "business plans, marketing strategies, advertising campaigns, and the like" without Cody's prior written consent. (Id. at § 5.)

The TRLA also included a provision by which Ms. Falsetti agreed to indemnify and hold harmless Cody and its affiliates for any third-party claims arising out of any use of the Falsetti Content. (Id. at § 8.)

## II. Cody's Merger with ALO, LLC

Around September 27, 2017, Cody informed Ms. Falsetti that it had been acquired by ALO, a yoga apparel company. (Dkt. No. 1 at 3-4; Dkt. No. 16 at 8.) Cody claims it informed Ms. Falsetti that this information was not public, and that it was developing a public campaign and strategy to announce the acquisition. (Dkt. No. 1 at 3-4.) Cody claims Ms. Falsetti "agreed at that time in that conversation that she would maintain the confidentiality of this information." (Id.)

On October 31, 2017, Cody sent an email to its subscription-based customers advertising a "last chance" sale featuring Ms. Falsetti's yoga videos. (Dkt. No. 16 at 8.) The email stated that Ms. Falsetti's videos would be "unavailable for purchase after November 6th," but that Cody hoped the sale would allow "members of the Cody community to enjoy her training for years to come, and wish[ed] her success in her future endeavors." (Id.) Ms. Falsetti claims she was not informed of this advertisement before it was sent, that it "generated considerable concern" and "raised numerous questions" among her followers, and that she was "left to fend off questions from concerned students" who contacted her via social media. (Dkt. No. 16 at 8-9.)

On November 22, 2017, ALO sent an email to Cody's subscription-based customers advertising its apparel. (Id. at 9.) Ms. Falsetti claims this email led her students and followers to

"reasonably believe[]" she was affiliated with ALO. (Id.) Thereafter, Ms. Falsetti "became aware that her students and followers were expressing concern and disappointment about her new affiliation with ALO," which they viewed as "antagonistic to her advocacy for the health and wellness of large-bodied persons." (Id. at 9-10.)

Ms. Falsetti claims ALO sells clothing in sizes limited to "slender-bodied" customers, and that its advertisements feature only "very thin" models. (Id. at 7-8.) According to Ms. Falsetti, ALO's clothing and brand image are incompatible with her own brand image and advocacy for larger-bodied people, as "many, if not most, of [her] students cannot wear ALO apparel because it does not fit large-bodied people." (Id. at 8.) Ms. Falsetti claims "Cody was fully aware of ALO's brand and reputation for selling and promoting apparel for only slender-bodied people and that ALO's brand was incompatible with Falsetti's brand and public image." (Id.)

Around December 5, 2017, Ms. Falsetti posted a statement on Instagram explaining that Cody and ALO were now affiliated, and that she was no longer working with either company. (Dkt. No. 1 at 4; Dkt. No. 16 at 10.) Cody claims Ms. Falsetti's post stated that ALO "perpetuates body shame," "is elitist and is a 'club that only some can be in,'" and that there were "sexual harassment/assault allegations against one of the owners (multiple counts)." (Dkt. No. 1 at 5.)

### III. Cody's Claims and Ms. Falsetti's Counterclaims

On December 6, 2017, Cody filed this action against Ms. Falsetti for breach of contract and trade libel. (Dkt. No. 1.) Cody claims Ms. Falsetti disclosed non-public information concerning its acquisition by ALO in violation of the TLRA. (Id. at 4.) Cody claims the disclosure was "combined with disparaging and critical commentary" and "defamatory

statements," was "purposeful, spiteful, and designed to damage Cody and its affiliated entity and injure their reputations in the community at large," and that Ms. Falsetti "knew when she made these statements and communications that they were false, or did so with reckless disregard of the truth . . ." (Id. at 5-6.) Cody claims the statements "have resulted, and will continue to result in pecuniary damage" including loss of business and damage to business reputation. (Id.)

On December 29, 2017, Ms. Falsetti counterclaimed for breach of contract and equitable indemnity. (See Dkt. No. 16.) Ms. Falsetti claims "Cody's calculated sale of its company to ALO, including materials incorporating [her] name and image, harmed [her] reputation" in violation of the TLRA. (Id. at 10.) Ms. Falsetti further claims Cody's conduct exposed her to separate litigation by ALO. See ALO, LLC v. Dana Falsetti, et al., Case No. 2:18-cv-00208 (C.D. Cal.).

Cody now moves to dismiss Ms. Falsetti's counterclaims and to strike her affirmative defenses pursuant to Federal Rules of Civil Procedure 12(b)(6) and 8. (See Dkt. No. 19.)

**Discussion**

**I.  Motion to Dismiss Counterclaims**

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a counterclaim for "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the non-movant. Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998).

The TLRA was not attached to the Complaint. (See Dkt. No. 1.) In general, the Court may not consider materials beyond the pleadings in ruling on a Rule 12(b)(6) motion without converting it into a Rule 56 motion for summary judgment. See Lee v. City of Los Angeles, 250

F.3d 668, 688 (9th Cir. 2001). However, even where a document is not physically attached to the complaint, it may be considered as part of a motion to dismiss where (1) its authenticity is not contested and the plaintiff's complaint necessarily relies upon the document, or (2) it is subject to judicial notice. Id. at 688. As the authenticity of the TLRA appears to be uncontested, and both parties have relied upon the TLRA by asserting claims for breach of contract, the Court will consider it as part of the motion to dismiss.

**A. Breach of Contract**

Ms. Falsetti claims that Cody's use of the Falsetti Content leading up to its acquisition by ALO breached the TLRA. (Dkt. No. 16 at 11.) In particular, Ms. Falsetti claims Cody "was fully aware of ALO's brand and reputation for selling and promoting apparel for only slender-bodied people," and that its sale of its assets, including the Falsetti Content, to ALO harmed her reputation. (Id. at 8, 11.)

By its terms, the TLRA granted Cody and its affiliates broad rights to use and promote the Falsetti Content without seeking Ms. Falsetti's "prior inspection or approval." (See Dkt. No. 19-1; § 4.) The only limitation was that Cody not use the Falsetti Content "in a manner intended to harm her reputation." (Id. at § 1(b).) Ms. Falsetti has not pleaded nor identified any facts from which intent to harm her reputation could be inferred.

Ms. Falsetti's counterclaim states merely that "[t]he apparent affiliation between Falsetti and ALO caused an uproar in the yoga community especially among Falsetti's large-bodied followers who believed she was now affiliated with ALO, a body shaming company." (Dkt. No. 16 at 11.) Even taken as true, Ms. Falsetti's claims that "Cody was aware that giving her Content to ALO . . . would be detrimental to Falsetti's reputation," and that its actions "were not inadvertent or mistake" (Dkt. No. 20 at 7) would not give rise to a claim for breach of contract.

**B. Equitable Indemnity**

Ms. Falsetti claims Cody's conduct has exposed her to and required her to defend against litigation by ALO, and that she is therefore entitled to attorney fees under the doctrine of equitable indemnity. (Dkt. No. 16 at 12.) "The critical inquiry under the causation element of equitable indemnity is whether, apart from A's actions, B's own conduct caused it to be 'exposed' or 'involved' in litigation with C." Tradewell Grp., Inc. v. Mavis, 71 Wn. App. 120, 129 (1993). "[A] party may not recover attorney fees under the theory of equitable indemnity if, in addition to the wrongful act or omission of A, there are other reasons why B became involved in litigation with C." Id. at 128.

Ms. Falsetti's counterclaim does not set forth any facts regarding ALO's lawsuit, let alone facts suggesting that Cody's conduct caused her to be exposed to or involved in litigation by ALO. The Court may take judicial notice of "court filings and other matters of public record." See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). ALO's complaint against Ms. Falsetti alleges that she made false and defamatory statements about the company on her Instagram account, including that: (1) there are "sexual harassment/assault allegations against one of the owners (multiple counts)" and (2) ALO "lies." See ALO, LLC v. Dana Falsetti, et al., Case No. 2:18-cv-00208, Dkt. No. 1-2 (C.D. Cal.). Even assuming Cody's affiliation with ALO led Ms. Falsetti to "reasonably believe[] that she owed an explanation to her students and followers" (Dkt. No. 20 at 5) her claims regarding ALO and its owners clearly negate any element of causation by Cody.

Further, the TLRA specifically provides that Ms. Falsetti "irrevocably waives any and all rights to seek or obtain any . . . equitable relief for any actions arising out of this Agreement . . ." (Dkt. No. 19-1 at § 4.)

1     Therefore, the Court GRANTS the Motion to Dismiss the counterclaims.

2     **II.     Motion to Strike Affirmative Defenses**

3     Rule 8(c) requires a party, in responding to a pleading, to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). An affirmative defense is sufficient under Rule 8 if it gives a plaintiff "fair notice" of the defense. Wyshak v. City Nat'l Bank, 607 F.2d 824, 827 (9th Cir. 1979). "Detailed pleading" and "great factual support" are not necessary. In re Washington Mut., Inc. Securities, Derivative & ERISA Litig., Case No. 08-1919MJP, 2011 WL 1158387, at *1 (W.D. Wash. Mar. 25, 2011); see also Bushbeck v. Chicago Title Ins. Co., Case No. C08-0755JLR, 2010 WL 11442904, at *4 (W.D. Wash. Aug. 26, 2010) ("Rule 8(c)(1) requires only that the defendant state its affirmative defenses; Twombly and Iqbal do not apply to the pleading of affirmative defenses.").

Cody moves to dismiss each of Plaintiff's affirmative defenses "[p]ursuant to Rule 8." (Dkt. No. 19 at 2, 8.) As Rule 8 does not provide a mechanism for striking affirmative defenses, the Court will consider Cody's request as a motion to strike under Rule 12(f). Under Rule 12(f), an affirmative defense may be stricken if it presents an "insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike should not be granted unless "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." In re Washington Mut., Inc., 2011 WL 1158387, at *2 (citation omitted).

The affirmative defenses Cody seeks struck are: (1) failure to state a claim; (2) truth; (3) privilege and non-actionable; (4) consent; (5) no damages; (6) no proximate cause; (7) third-party conduct; (8) plaintiff's own conduct; (9) estoppel, waiver, unclean hands, assumption of risk; and (10) privity of contract. (Dkt. No. 16 at 4-5.)

The Court finds as follows:

− Affirmative Defenses 7, 8, 9 and 10 are proper affirmative defenses.

− Affirmative Defense 1 is not an affirmative defense, but rather an attack on the adequacy of the pleadings.

− Affirmative Defenses 2, 3, 4, 5 and 6 are not affirmative defenses, but rather denials.

While improperly pleaded, Affirmative Defenses 1, 2, 3, 4, 5, and 6 are relevant to the litigation and are not immaterial, impertinent, or scandalous. The Court considers them not as affirmative defenses, but rather as general denials or objections. Therefore, the Court DENIES the Motion to Strike the affirmative defenses.

**Conclusion**

Because Ms. Falsetti has failed to state a claim for breach of contract or equitable indemnity, the Court GRANTS Cody's Motion to Dismiss with respect to her counterclaims. Because Ms. Falsetti has properly pleaded affirmative defenses and denials, the Court DENIES Cody's Motion to Strike her affirmative defenses.

The clerk is ordered to provide copies of this order to all counsel.

Dated March 8, 2018.

_____
Marsha J. Pechman
United States District Judge